UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 18 CR 852 |
| v. | Rebecca R. Pallmeyer |
| RAYMOND WU | |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO MODIFY CONDITIONS OF BOND**

The United States of America, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully requests that the Court deny the defendant's motion to modify the existing conditions of bond.

In 2016, defendant Raymond Wu was convicted and sentenced for committing wire fraud. The judicial system failed to deter Wu from committing crime. Wu has repeatedly lied and violated court orders. The conditions of release should remain in place because the defendant cannot be trusted to obey the Court's orders, and to refrain from fleeing or committing crime, based on less restrictive conditions.[1]

Defense counsel argues that the defendant no longer presents a risk of flight or a danger to community because he has complied with his bond conditions, namely, remaining in home detention for approximately six months, since April 2019. That

---

[1] The government previously addressed the need for detention (or restrictive conditions) in three filings, which included supporting exhibits, namely, the government's Motion to Continue Detain Defendant WU, Dkt. #25; Additional Exhibits in Support of the Government's Motion to Continue Detaining Defendant Wu, Dkt #33, and Government's Response to Defendant's Motion to Reconsider Detention, Dkt 39.

argument should be rejected in light of the defendant's prior criminal conduct. Wu violated court orders, lied, and committed fraud, which included the following:

- Wu lied to the court in Milwaukee and violated the conditions of bond.

- While on Supervised Release, Wu lied to Probation about his employment.

- Wu lied to Pretrial Services in California about his employment and prior travel.

- Wu lied to Pretrial Services in Chicago about his employment.

- While on Supervised Release, Wu fraudulently attempted to obtain $200,000 from an investor, Sou W-L.

- While on Supervised Release, Wu lied to investors and family about going to prison, in order to conceal that he had been convicted of committing fraud.

- While in a half-way house, Wu lied to investors and family about having been in prison, in order to conceal that he had been incarcerated for committing fraud.

- Wu attempted to obstruct the FBI investigation.

- Wu concealed his financial status, thereby avoiding his restitution obligations.

## **Wu Lied to the Court in Milwaukee**

While on bond, Wu lied to the Milwaukee court and prosecutors by providing false financial information to them, thereby concealing the fact that Wu had collected more than $1 million from investors prior to his sentencing in Milwaukee in 2017 (excluding the two named investors in the Milwaukee case). See the draft Timeline Chart, which is attached.[2]

---

2 Wu was arrested in 2015, placed on bond, and charged with committing wire fraud. In 2016, Wu pled guilty, and was sentenced to 12 months in prison. In 2017, Wu went to prison, and was released to a halfway

2

Although Wu may contest the fact that he was engaged in fraud, bank records and other financial records show that Wu obtained at least $1 million from other individuals between 2009 and his Milwaukee sentencing in 2017. Wu concealed that information from the Milwaukee judge and prosecutors. For example, Wu provided to them a financial statement in which Wu falsely represented that he did not have his own business, even though Wu had a business that he used to collect funds from individuals.

### **Wu Lied About His Employment While on Supervised Release**

**Wu lied to the Probation Office in California:** For approximately one year, between approximately November 2017 and December 2018, while on Supervised Release, Wu lied to the Probation Office in California. According to the California Probation Officer, Wu filed Monthly Reports during that time.

According to the Probation Officer, Wu reported that he worked for Koi Shi Catering throughout 2018, and that he worked 40 hours a week and earned $4,000 a month. None of that was true. According to the owner of Koi Shi Catering, Wu did not work for that company, and the company did not make any payments to Wu.³

Moreover, according to the Probation Officer, Wu did not disclose his consulting business or his company Five Fold Equity. Wu concealed the fact that Wu was obtaining

---

house, and was placed on supervised release. In 2018, Wu was on supervised release, until he was arrested in connection with this case in December 2018.

3 According to the owner if Koi Shi Catering, he knew that Wu had been in prison, and Wu asked whether he could use the name of the catering company on court documents.

funds from individuals by claiming to work for Koi Shi Catering. Wu failed to disclose that he obtained approximately $300,000 in 2018 from individuals, thereby preventing the Probation Office and others from investigating the source of those funds and adjusting the amount of restitution to be paid.

**Wu lied to Pretrial Services in California:** After his arrest in California in December 2018, Wu lied to Pretrial Services about his employment. According to the Pretrial Services Report, Wu said that he worked as a manager at Koi Shi Catering for the last year (2018). Wu said that he earned $4,000 per month. That was not true. As stated above, Wu did not work for that company.

**Wu lied to Pretrial Services in Chicago:** After Wu was transferred to Chicago, he was interviewed by a Chicago Pretrial Services Officer, and he again lied about his employment, stating that he worked for Koi Shi Catering during 2018.

According to the Pretrial Services Report, on advice of counsel, Wu did not disclose information about his consulting business or his company Five Fold Equity because of the pending charges. Because Wu would not discuss his actual employment history, there is no way to evaluate his prior employment or his prior income.

### Wu Lied to Pretrial Services about his International Travel

After Wu was arrested in California, he lied to Pretrial Services about the extent of his international travel. The Magistrate Judge held a detention hearing and concluded that Wu had intentionally lied to Pretrial Services.

The Magistrate Judge concluded that Wu presented a risk of flight and a danger to the community. In the Detention Order, the Magistrate Judge stated that, as to flight risk:

- "Current charges were committed while on SR [Supervised Release] for a prior similar offense";

- "[Defendant] had extensive foreign travel history that was not revealed to Pretrial Services"; and

- "[Defendant] told probation officer in prior case that he had to travel internationally for his job".

The Magistrate Judge stated that, as to danger to the community:

- "Alleged offense conduct committed while on SR [Supervised Release] for a prior similar conviction";

- "[Defendant] gave false statements to Pretrial [Services Officer]"; and

- "[It] would be very difficult to monitor computer usage, his vehicle for committing fraud crimes."

### While on Supervised Release, Wu Lied to Investor Sou-W-L

In April 2018, while on Supervised Release, Wu obtained approximately $100,000 from investor Sou W-L ("Sou"). See Timeline Chart. According to Sou, the defendant stated that those funds would be invested in a company known as Lexington, which was an equity investment company. In fact, according to financial records reviewed by the FBI, Wu did not invest those funds in Lexington as promised.

On December 5, 2018, while on Supervised Release, the defendant sent a text message to Sou stating that Lexington had issued a capital call, and therefore, Sou needed to provide another $200,000 to Lexington. That was a lie, and it was a fraudulent attempt

5

by Wu, who was on Supervised Release, to obtain $200,000 from the investor. Sou responded with a text message in which she agreed to do so. (This took place less than a year ago, shortly before Wu was taken into custody).

In fact, Lexington had issued a capital call, but it did not relate to Sou's funds, because Wu had not invested any of Sou's money in Lexington. Although Wu may contest that he committed fraud, it would be difficult to contest this part of the fraud, because Wu's request for $200,000, and his explanation concerning Lexington, is set forth in a text message. Records show that Wu did not invest Sou's money in Lexington. Wu's attempt to obtain $200,000 from Sou in December 2018 was a violation of his Supervised Release.

**While on Supervised Release, Wu Lied to Investors and his Family about Prison**

Wu reported to prison on January 31, 2017 to serve his one-year sentence in the Milwaukee fraud case. Before reporting to prison (and while on Pretrial Release) Wu told certain investors that he was going to be out of touch for approximately one year, and would not have access to emails or phone calls.

Wu lied about the reason that he would be out of touch in order to conceal the fact that he had been convicted of fraud and sentenced to prison. Instead of explaining that he was going to prison, Wu gave various false explanations to certain investors, including that he was going to go (and did go) on a yearlong trip to find new investments, and that he was going to go (and did go) to China to be treated for pancreatic cancer.

The defendant raised money from three of those investors (Tom P., Stan F. and Sou

6

W-L) both before and after his incarceration. Specifically, after the defendant was released from custody, he obtained $130,000 from Tom P., and $125,000 from Stan F., as well as $100,000 from Sou W-L. See Timeline Chart.

On January 31, 2017, just before reporting to prison, Wu sent an email to his parents, his sister, and other family members, including more than fifteen people, falsely representing that he would be out of touch with them because he was going on a worldwide trip. In that email, Wu stated:

> "Hi Cousins!...Something exciting for me.
>
> I was selected to be on a Business and Technology Committee that travels the world with some of the most renowned global innovators.
>
> Buffet, Gates, Bezos, Musk, Cook, Branson, Page, and Fiorina are amongst the group of leaders whereas myself and 49 others get to tag along….
>
> The program will be for about 16 weeks so if you need to reach me, just send me an email here or contact Erica [Wu's girlfriend]!... Ray"

### While in a Half-way House, Wu lied to Investors and his Family

Shortly after Wu was released to a half-way house in California to complete his sentence from the Milwaukee case, Wu told investors that he had come back to the United States after travelling overseas, thereby concealing the fact that he had been convicted of fraud and had spent time in prison.

While Wu was in the half-way house in October 2017, Wu sent an email to investor Greg C., stating: "Greg, I've missed you my good friend! Making my way back stateside. Travels were amazing. Very interesting opportunities and very very interesting people."

While Wu was in the half-way house in October 2017, Wu also sent an email to investor Tom P. in which Wu confirmed (falsely) that he had been treated for pancreatic cancer.

On September 21, 2017, while in the half-way house, Wu sent an email to his parents, his sister, and other family members, including more than fifteen people. In that email, Wu falsely represented that he had just returned to the United States, thereby perpetuating the lie that he had been out of touch because he had been travelling overseas. In the email, Wu stated: "Hi Family! Thank you for the…warm welcome back. I arrived Stateside this past week…Ray."

### **Wu Attempted to Obstruct the FBI Investigation**

Wu sent an email to his sister dated January 20, 2019, in which Wu directed his sister to "reinforce" with his parents, that his parents should "not engage or speak" to the FBI agent investigating the case. Wu sent that email while he was in custody in California, based on his arrest in the instant case. It appears that the email was a follow up to a phone conversation that Wu had with his sister, in that, the subject line said: "thanks for call".

The FBI case agent in this case had, in fact, contacted Wu's sister, who initially refused to speak to the agent. The case agent also contacted Wu's father. It appears that Wu was trying to prevent his parents and sister from talking to the FBI agent.

In the email, Wu stated: "sorry about the disturbance today by the agent. Please pass that to mom and dad as well. And please reinforce for them to not engage or speak."

## **Wu Concealed His Financial Condition in Connection with Restitution**

The Milwaukee court ordered Wu to pay restitution of more than $200,000 to victims in the Milwaukee case. Wu lied about his financial situation to the Milwaukee Court, and later lied to the Probation Office, thereby avoiding his restitution obligation. Although Wu obtained more than $300,000 after the sentencing, Wu paid less than $5,000 in restitution.

## **The Conditions of Release Should Not be Modified**

Defense counsel asks that Wu be released from home detention, and that Wu be allowed to use the internet and phone with essentially no restrictions, except his agreement not to contact victims. The government respectfully requests that Wu's motion be denied.

Releasing the defendant from home detention creates a serious risk that he will flee or commit additional fraud.

In terms of the phone, Wu is currently allowed to contact his attorney and certain family members. That gives him the ability to help prepare his defense, and to communicate with his family. He does not need additional access to the phone. The defendant used the phone and internet to lie to investors and his family while on bond and supervised release, and to solicit funds. Defense counsel does not provide a basis for Wu's request to use the phone for general purposes, so there is no reason to modify the conditions concerning the phone.

Defense counsel asks that Wu be able to use the internet for normal purposes. That does not explain why Wu should be given unfettered access to the internet, which could result in Wu's committing additional fraud. Allowing unrestricted use of the internet simply opens up the opportunity for the defendant to commit fraud in various ways, including creating a website and reaching out to potential victims.

Defense counsel also says that Wu would like to use the internet to communicate with his counsel and to assist in the preparation of his case. Wu has phone access to his counsel, and Wu can use the mail to communicate with his attorney. Wu does not need to have internet access as well.

Defense counsel argues that Wu would like to get a job. It appears that Wu has supported himself since at least 2009 by obtaining funds from other people. It appears that Wu has not held a legitimate job, working for someone else, in at least ten years.

Wu's prior conduct shows that Wu cannot be trusted to abide by less restrictive bond conditions. Pretrial Services and Wu's parents do not have the resources to provide sufficient oversight of Wu to ensure that he does not commit fraud or flee.

Although Wu's parents have posted their home, that is not sufficient to prevent Wu from fleeing. Wu owes approximately $1.4 million to investors. See Investor Summary Chart attached. He owes more than $200,000 restitution in the Milwaukee case. According to the attorney for Wu's sister, Wu also owes his sister a large sum of money, which he has failed to repay. The cost of repaying his parents is not sufficient to prevent flight.

Wu has not lived in Chicago for many years. He does not have a job in Chicago, or any in interest in a company, career, or pension in Chicago, or anywhere, that would prevent him from fleeing. Moreover, the defendant does not own property in Chicago, or anywhere, that would prevent him from fleeing.

Wu has travelled overseas and he lied to Pretrial Services about his travel. Wu also lied to Probation and Pretrial Services about his employment, and he lied to the judge in Milwaukee about his finances. Those lies create a risk that the Wu intends to and will flee and will continue to commit fraud.

## Conclusion

The defendant presents a risk of flight and a danger to the community, and there are no less restrictive conditions that will prevent flight or protect the community. The defendant has repeatedly lied and violated court orders. The defendant has defrauded and lied to investors. There is a tremendous likelihood that the defendant's parents will lose their home if less restrictive conditions are imposed. The government respectfully requests that the Court deny the defendant's motion.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: *s/ Jacqueline Stern*
JACQUELINE STERN
Assistant U.S. Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604   (312) 353-5329

11