IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>                                        )<br>    v.                                   )<br>                                        )<br>RAYMOND WU                   ) | No. 18 CR 852<br><br>Hon. Rebecca R. Pallmeyer |

**DEFENDANT WU'S PRELIMINARY OBJECTION TO THE PSR
AND MOTION TO CONTINUE SENTENCING**

Defendant RAYMOND WU, by the FEDERAL DEFENDER PROGRAM and its attorney DANIEL J. HESLER, submits the following preliminary objection to the PSR. This is not the defendant's real sentencing memorandum, but there is a legal issue that can be addressed now. This is also a motion requesting a continuance on this sentencing. A status hearing is being requested. Defendant further states as follows:

**I.    The three levels imposed by the PSR under USSG §3C1.3 are inapplicable**

Part of the PSR's guidelines calculation include a three level enhancement under USSG §3C1.3. The defense's objection to this enhancement is based on the plain text of the guideline, but the interpretation of that guideline requires consideration of *Apprendi* principles. The issue raised here is whether the PSR correctly increases Mr. Wu's guidelines level under USSG §3C1.3 for "Commission of Offense While on Release." On first glance, a guideline with that caption would seem to apply here. As a factual matter, there is no doubt that Mr. Wu made material misrepresentations to people while he was on bond on his prior federal case. However, that is not what the text of §3C1.3 requires. Section §3C1.3 reads as follows, in full:

1

> If a statutory sentencing enhancement under 18 U.S.C. § 3147 applies, increase the offense level by 3 levels.

That leads to an obvious inference that the applicability of this enhancement hinges on the answer to the question of whether a "statutory sentencing enhancement under 18 U.S.C. § 3147" applies in any particular case. Section 3147 states:

> A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense, to—
> **(1)** a term of imprisonment of not more than ten years if the offense is a felony; or
> **(2)** a term of imprisonment of not more than one year if the offense is a misdemeanor.
> A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

Thus, if §3147 applies in this case, that statute would allow this Court to impose an extra ten years of custody on Mr. Wu, and any sentence imposed under §3147 would have to be consecutive to the sentence imposed on the four substantive counts in this case. A question arises as to whether this applies when the defendant has not been charged in the indictment with a violation of 18 U.S.C. § 3147, and did not admit to such an offense as part of the guilty plea.

One place to start would be by looking at what has been said so far about the penalties Mr. Wu faces. Section 3147 is not mentioned in the indictment in this case. According to the PSR in this case, the statutory maximum in this case is 20 years on each of counts one through four. No mention is made of any possible additional 10 years based on §3147, nor has there been any discussion about how any consecutive sentence under §3147 should be implemented. This comports with what was discussed at the time of the

2

change of plea in this case, as well as the statutory penalties outlined in the government's version of the offense. *See* Gov. Ver. at page 37 (attached to PSR). Thus, it seems that the statutory enhancement under §3147, of an extra term of up to ten years custody which must be consecutive, is not actually being applied in this case. No one thus far has suggested that the statutory maximum is 90 years instead of 80.

It might next be asked whether those extra ten years <u>could</u> be imposed. The relevant authority is *Apprendi v. New Jersey*, 530 U.S. 466 (2000). As this Court well knows, the holding of *Apprendi* is that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Id.* at 490. In practice, this means that the statutory penalties for an offense must be apparent from the indictment. Since *Apprendi,* district courts do not have the power to make judicial findings at sentencing that increase statutory maximums, except for a narrow exception for enhancements based solely on prior convictions. *See Almendarez-Torres v. United States*, 523 U.S. 224 (1998) (holding that in a prosecution under 8 U.S.C. §1326, the increased maximum penalties for illegal reentry after prior convictions apply regardless of whether the prior convictions were alleged in the indictment or admitted to as part of the guilty plea).

The present situation involves a straightforward application of *Apprendi*. Section 3147 allows courts to impose up to an extra ten years based on whether a person committed an offense on federal bond. Thus, §3147 clearly increases the statutory penalties for wire fraud if it applies. Moreover, the fact that the newer offense was

3

committed while on bond requires significantly more factfinding than would be satisfied simply by showing the fact of the prior conviction. It is not enough to show that Mr. Wu has a prior conviction. The questions are whether he was released on bond in that prior case, and then whether he committed conduct from this case during that time. Those twin findings may not be difficult to make, but they are nevertheless factual findings other than the fact of a prior conviction. Indeed, from the text of §3147, it is apparent that a person could receive an extra ten years for an offense (call it "offense B") committed while on bond for offense A, even if they were ultimately acquitted of offense A. There is nothing in 18 U.S.C. §3147 requiring that the defendant be ultimately convicted of the offense they were on bond for. Therefore, it is clear that the narrow *Almendarez-Torres* exception for prior convictions does not apply to §3147, even if it is considered a sentencing enhancement. A sentencing enhancement that increases the statutory penalties for an offense triggers *Apprendi* requirements. (That was in fact the exact scenario in *Apprendi* itself. 530 U.S. at 468-470.).

Thus, under *Apprendi*, the extra ten years of punishment could be imposed only if the person if § 3147 is charged in the indictment, and either a jury makes factual findings concerning §3147 beyond a reasonable doubt, or the defendant admits that facts at the change of plea. None of that happened here. Mr. Wu pled guilty to four counts of wire fraud, but did not stipulate that he was on bond at the time, nor was he given any formal pre-plea notice of §3147 or its penalties. The fact that he the present conduct and his prior pretrial release did in fact overlap is irrelevant, in the same way that someone pleading to a DUI charge in which someone died does not permit a court to impose the statutory

4

penalties for murder if that was not the offense charged and pled to. The conclusion seems inescapable that Mr. Wu is not actually facing a statutory enhancement under 18 U.S.C. §3147, and such an enhancement could not be imposed on this existing indictment.

This brings us back to the question of whether the three levels under USSG §3C1.3 apply nevertheless, as a guidelines matter, within the 80-year statutory range. This becomes a question of reading the plain text of the guideline. Once again, guideline §3C1.3 reads as follows:

> If a statutory sentencing enhancement under 18 U.S.C. § 3147 applies, increase the offense level by 3 levels.

It would be hard to make this guideline any clearer. If a statutory enhancement under §3147 applies, add three levels. The sentencing commission could have written this provision to say "if the offense of conviction was committed while the defendant was on bond in any other case, increase the offense level by 3 levels." That would have been easy to do, and it would have made §3C1.3 consistent with almost everything else in the guidelines, in that it would ask courts to make factual findings by the preponderance of the evidence in order to justify guidelines level increases within existing statutory maximums. Such findings are covered by the relevant conduct principles of USSG §1B1.3, and are not dependent on whether any given fact is charged in the indictment or not. If the guideline were written that way, Mr. Wu would be getting these three levels. There was an overlap between this case and his tenure on bond in the Milwaukee case. But that is not the question that §3C1.3 asks. Instead, §3C1.3 specifically ties these three

levels to whether the "statutory sentencing enhancement" applies. The statutory sentencing enhancement would be that extra ten years, which must be consecutive. That is what §3147 does. Section 3C1.3 further does not ask whether those extra ten years "could" apply, or "would apply if the defendant had been charged under § 3147." It asks if they do apply. And in Mr. Wu's case, they don't.

To apply these three levels in spite of this would violate everything the Supreme Court has taught about the reading of legal texts for the last 75 years. "The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' … Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (citations omitted); *see also* ANTONIN SCALIA & BRIAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012) ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.").

The same principles apply to the interpretation of sentencing guidelines, and there is no ambiguity in the text of §3C1.3 whatsoever. The analysis must start and end with the question of whether the "statutory sentencing enhancement under 18 U.S.C. § 3147" applies, unless a court wishes to adopt a "I know what they should have written even if they didn't say it" approach to textual interpretation. Thus, since the extra years of potential incarceration from §3147 do not apply, the three levels under §3C1.3 do not apply in Mr. Wu's case.

None of the Seventh Circuit cases mentioning USSG §3C1.3 or its predecessor, §2J1.7, whether cited by the government or not, really address this issue. The most recent Seventh Circuit decision the government cites is *United States v. Marcotte*, 835 F.3d 652 (7th Cir. 2016). In *Marcotte,* the Seventh Circuit affirmed that when a person is charged with failure to report for service of their sentence under 18 U.S.C. §3146, their sentence could be enhanced under §3147 for committing the offense while on pretrial release. Mr. Marcotte challenged whether it could be said that the failure to surrender for his sentence occurred while he was on bond, whether it was double counting to apply multiple enhancements, and whether the double jeopardy clause was implicated. However, there is no hint in *Marcotte* that the issue being litigated here was raised (*i.e.,* whether the plain text of §3C1.3 supports the enhancement when the defendant has not been charged under §3147 and is therefore not receiving the statutory enhancement). *United States v. Parolin,* 239 F.3d 922 (7th Cir. 2001) is similarly inapplicable. *Parolin* holds (on plain error analysis) that there was no *Apprendi* violation for a sentence that did not exceed the statutory maximum for the underlying counts, but did not discuss the text of the guidelines. *United States v. Sturman,* 49 F.3d 1275 (7th Cir. 1995), does hold that no notice is required before imposing an enhancement under §3147, but *Sturman* predates *Apprendi,* and the text of the guideline is not even discussed. *See also United States v. Fitzgerald,* 435 F.3d 484 (4th Cir. 2006) (rejecting challenges based on double counting and double jeopardy but not addressing the question raised in Mr. Wu's present filing).

A case that did address this issue is *United States v. Lawson*, 2002 WL 992369, 2002 U.S. Dist LEXIS 8752 (W.D. Va May 9, 2002). In *Lawson,* the court found that the

7

three levels under §2J1.7, which was subsequently moved to §3C1.3, were not applicable.

The court's reasoning was as follows:

> Since the sentencing enhancement provided for in § 3147 increases the maximum penalty to which the defendant is otherwise subject, I find that it is the functional equivalent of an element of the crime, and thus was required to have been charged in the indictment. ... In *Apprendi* the Court excluded from its new rule, at least for the time being, sentencing enhancements based upon prior convictions. *See Apprendi,* 530 U.S. at 489-90. However, the enhancement contained in § 3147 does not involve a prior conviction, but the determination of whether the principal offense was committed while the accused was "released" under the Bail Reform Act. While that may not involve a difficult factual determination in most cases, it nevertheless is a fact to be charged and proved to the same extent as, for example, the interstate travel of the firearms Lawson possessed.
>
> It is true that the enhancement here did not produce a greater sentence for Lawson than the ten-year maximum prescribed for his underlying offense. ... While it has been held that *Apprendi* does not apply to the application of § 3147 unless the actual enhanced sentence received by the defendant exceeds the maximum statutory sentence for the underlying offense, *see ... United States v. Parolin,* 239 F.3d 922, 930 (7th Cir. 2001), I find to the contrary, since § 3147 requires an additional, consecutive sentence to that imposed for the original crime.
>
> It has also been held that the assimilation of § 3147 into a sentencing guideline precludes any *Apprendi* challenge. *See United States v. Randall,* Nos. 01-1452, 01-1453, 2002 WL 562830, at *3 (1st Cir. Apr. 19, 2002). However, § 2J1.7 of the guidelines is expressly conditioned upon the application of § 3147. While the Sentencing Commission might have adopted a specific offense characteristic providing for a three-level increase for offenses committed while on release, it instead provided for the enhancement only in the circumstances where § 3147 applies. Since I find that § 3147 cannot be applied here in the absence of an indictment setting forth its violation, I hold that § 2J1.7 is in turn inapplicable.

(some citations omitted). As a 2002 district court case from West Virginia, *Lawson* is not

binding authority, but its reasoning is sound. The extra sentence mandated by §3147

cannot be applied because to do so would violate *Apprendi,* and the three levels under the

8

guideline cannot be applied because those guideline levels are specifically tied to imposition of the statutory penalties under §3147. *See also United States v. Borker,* 2019 WL 1790054, 2019 U.S. Dist. LEXIS 69829, at 59-67 (S.D. N.Y. April 24, 2019) (rejecting application of §3C1.3 on *Apprendi* and notice grounds).

     Many of the cases cited by the government have the flaw that a §3147 enhancement actually was charged, or that juries made §3147 findings. *United States v. Lewis,* 660 F.3d 189, 196 (3rd Cir. 2011) is such a case. It is true that *Lewis* held that §3147 was a sentencing enhancement and not a separate offense of conviction, but the major consequence of that distinction, which the Third Circuit described as not making much of a difference in interpretation, was to vacate the extra $100 special assessment. *Id.* at 195-96. The Third Circuit did note that *Apprendi* was implicated, especially because the district court imposed a sentence above the statutory maximum for the underlying offense. The jury in *Lewis* had made findings on the §3147 allegation, and so there was no *Apprendi* violation in that case. *See also United States v. Gowing,* 683 F.3d 406 (2nd Cir. 2012) (rejecting defense challenges but noting that the district court submitted the §3147 charge to the jury requiring them to make findings on all the elements of that offense "as it was required to do"); *United States v. Capri*, 2007 U.S. Dist. LEXIS 58609 (N.D. Ill Aug. 9, 2007) (post trial ruling by Judge Der-Yeghiayan noting that the jury had been instructed on, and made findings on §3147 in a bifurcated trial).

## II.     This sentencing should be continued

There are two reasons that this sentence should be continued. The first is that the issue discussed above is fairly novel, and a response and probably a reply are in order. The second and more substantial reason is that this is not Mr. Wu's real sentencing memorandum, and counsel still needs time to finish the work on that, including not only writing a memo, but more work on examining the case itself.

This is a substantial request and requires a substantial explanation. The primary issues that remain to be addressed are §3553, and possibly the amount of loss. The complicating factor is the complexity of this case. The government has alleged conduct between 2009 and 2018, but there is no unifying factor in this scheme other than Mr. Wu and false statements. Each victim alleged in the government's 50-page sentencing submission presents a different situation. Some invested with Mr. Wu, some hired him to create marketing materials and websites in exchange for a share of their companies, and some loaned him money that he did not pay back as he had promised. For those who hired him, all indications are that a large amount of real activity did take place; websites, movies, and marketing materials actually were created, and there was a restaurant. It seems likely that these dealings could be deemed fraudulent in that they were mixed with material false statements, including about the reason for Mr. Wu's absence in 2017, but that does not mean that the loss amounts should not be reduced by fair market value of the materials and services actually provided. Similarly, Mr. Wu may have made false statements to people he owed money to, but if a false "I will pay you next week" necessarily constitutes wire fraud, then the federal fraud statutes are applicable to a lot of

people. All of this leads to factual questions involving the unraveling of a decade's worth of business dealings. Counsel is trying to do that, with Mr. Wu's help, but all of that is made more difficult by the combination of counsel's caseload, the pandemic, counsel's lack of background in business, finance or accounting, and the fact this type of case involves needing to use a team approach to investigation and analysis, and those aspects of defense work have been more affected by the pandemic than anything else.[1]

The defense in this case may choose not to contest the amount of loss. That decision still has not been made. If it is conceded that the proper scope of the scheme in this case is "everything Mr. Wu has ever done that involved false statements between 2009 and 2018," which seems to be the government's position, then it would be difficult to understand how the Milwaukee conduct could possibly be excluded from that. If the Milwaukee conduct is considered relevant conduct, that might increase the loss amount, but take away criminal history points and suggest that any sentence imposed now should be reduced by the year already served. But whether the loss is challenged or not, there is a still a fundamental §3553 question in this case as to whether Mr. Wu is someone who sets out to rip people off, or is simply a person who has been trying to make things happen while overselling his own successes and not being able to admit his failings. The government clearly believes the worst of Mr. Wu. It may make sense to make a showing

---

[1] In other words, counsel has been able to keep writing legal memos and the like from home in the last year, albeit with some loss of efficiency, but is really bad at the kinds of projects that would have previously involved a paralegal, several legal interns, and an investigator. That is what this case previously involved, and probably still requires. It is also not helpful that counsel has continuously underestimated how long the Covid-19 situation would last.

of what he did do to rebut the idea that he necessarily started out with bad intentions. The distinction might not change the guidelines, but clearly would be a major §3553 consideration.

## Conclusion

Essentially, the defense is not ready to proceed with the sentencing in this case. Because the discreet legal issue raised above can be addressed, it has been raised and work can start on that. Counsel does want to wrap this case up, but it remains daunting.

For the forgoing reasons, the defense therefore requests that a prompt status hearing be set and held to discuss further scheduling in this case.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: */s/ Daniel J. Hesler*
    Daniel J. Hesler

DANIEL J. HESLER
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8347

# CERTIFICATE OF SERVICE

The undersigned, Daniel J. Hesler, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CIV.P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

DEFENDANT WU'S PRELIMINARY OBJECTION TO THE PSR
AND MOTION TO CONTINUE SENTENCING

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on April 13, 2021, to counsel/parties that are non-ECF filers.

By: */s/Daniel J. Hesler*
DANIEL J. HESLER
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, Illinois 60603
(312) 621-8347