IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 18 CR 852 |
| v. | ) |
| | ) Honorable Rebecca Pallmeyer |
| RAYMOND WU | ) |

**DEFENDANT WU'S REPLY
TO THE GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant RAYMOND WU, by the Federal Defender Program and its attorney, DANIEL HESLER, respectfully submits the following reply to the government's sentencing memorandum. The defendant further states as follows:

**I.       Guidelines issue: Does the three level enhancement under §3C1.3 apply?**

The government has not meaningfully rebutted the defense's assertion that the three level enhancement under USSG §3C1.3 is inapplicable in this case. The defendant's lengthy exploration of this topic in ECF #96 still stands as Mr. Wu's primary argument on this issue. Nevertheless, to recap and in response, the defense argument is fundamentally based on the plain text of the guideline. Guideline §3C1.3 says

> If a statutory sentencing enhancement under 18 U.S.C. § 3147 applies, increase the offense level by 3 levels.

It is significant that guideline does not ask the question whether the defendant committed the instant offense while on bond. If that were the test, this enhancement would apply to Mr. Wu. But that is not what the text of the §3C1.3 asks. The question is whether the "statutory enhancement under 18 U.S.C. §3147 applies." It does not ask whether it could apply, or would apply if it had been charged. The plain text of the

1

guideline links the three level enhancement with the actual application of the statutory enhancement.

Necessarily, that leads to ask the question of whether the statutory enhancement under §3147 actually applies here. Section 3147 says as follows:

> A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense, to—
> 　　**(1)** a term of imprisonment of not more than ten years if the offense is a felony; or
> 　　**(2)** a term of imprisonment of not more than one year if the offense is a misdemeanor.
> A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

Therefore, if one asks what the "statutory enhancement under 18 USC §3147" is, it is a mandatorily consecutive sentence of up to 10 years beyond the ordinary statutory maximum of the underlying offense. And as discussed in ECF #96, there is no hint in this case that Mr. Wu is facing that extra sentence here. This Court has the power to impose a sentence of up to 80 years here, but not 90 or 120.[1]

An additional point about the plain text of §3C1.3 is that it uses the phrase "statutory sentencing enhancement." If that phrase were merely "sentencing enhancement," the government's argument, that the extra three levels under §3C1.3 are applicable whether or not the extra 10 years are added to the maximum sentence, might

---

[1] It is not clear to defense counsel how §3147 would interact with an indictment like this where a defendant is charged with four separate executions of a single scheme. Would that result in an extra 10 years of possible enhancement? Or would it be 10 years for each count, resulting in a possible extra 40 years? Because §3147 is not statutorily applicable in this case, this Court need not decide this issue.

be <u>slightly</u> more tenable. It would require reading §3C1.3 to mean "if the Court finds that factual conditions that would allow a statutory enhancement under §3147 are present, increase the offense level by three levels." But that is not what §3C1.3 says. It contains the word "statutory." Statutory means statutory. There is no way to read the phrase "If a statutory sentencing enhancement under 18 U.S.C. § 3147 applies…" as requiring anything other than what 18 U.S.C. §3147, imposes; an additional sentence that must be consecutive to the underlying sentence. There is no ambiguity in §3C1.3 whatsoever.

The government implies that the background commentary to §3C1.3 supports its position. *See* ECF#122 at 4-5. That background says that "An enhancement under 18 U.S.C. § 3147 applies, after appropriate sentencing notice, when a defendant is sentenced for an offense committed while released in connection with another federal offense." There are several problems with this argument. First, to the extent that the three levels from §3C1.3 are tethered to the applicability of 18 USC §3147, the Sentencing Commission is not the body that determines the applicability of §3147. That is primarily the job of Congress, and secondarily of the courts, but only to the extent that there is ambiguity in the Congressional enactment. There is no reason whatsoever to think that background commentary in the guidelines expands the reach of any statute, including §3147. A second problem with the government's reasoning is that the commentary they are quoting is from the "background" section, and not an application note. "Background" would be an odd place to put something that changes the meaning of a guideline or statute.

The real problem with the government's reliance on the background commentary, however, is that it does not answer the question of when §3147 is applicable or not. A key phrase in that commentary is "after appropriate sentencing notice." That phrase begs the question of what constitutes appropriate sentencing notice. The Supreme Court has addressed this issue. This is what *Apprendi v. New Jersey* was about. 530 U.S. 466 (2000). The issue in *Apprendi* was whether a statutory enhancement, in that case based on whether a shooting was committed for hate crime reasons, could apply even though it had not been charged in the indictment. *Apprendi* held that a statutory enhancement (other than the fact of a prior conviction) cannot be imposed unless it was specifically charged in the indictment. It did not matter in the *Apprendi* case that the defendant had pled guilty with a plea agreement in which the government specifically reserved the right to seek an enhanced sentence based on the hate-crime motivation. *Id.* at 470. There is no doubt that Mr. Apprendi had actual notice when he pled guilty that an extended sentence was being sought. The Supreme Court held that such notice was nevertheless insufficient. It had to be in the indictment. Therefore, for a statutory enhancement like 18 USC §3147 which actually increases the maximum penalty that can be imposed by 10 years, the phrase "after appropriate sentencing notice" means that it has to be charged in the indictment. No other notice qualifies as "appropriate" to receive a statutory enhancement. Thus, the commentary that the government points to on does not support their position that §3C1.3 is applicable to Mr. Wu.

The government does not seem to grasp the significance of *Apprendi* in the defense's argument. The government's sentencing memo says that *Apprendi* is

4

inapplicable because no one is seeking extended statutory penalties for Mr. Wu. *See* ECF#122 at 66. It is correct that the extra ten years are not being sought here. However, that is not why *Apprendi* is relevant to this case. Instead, the issue here is simply that the plain text of the guidelines enhancement asks the question of whether the "statutory sentencing enhancement" applies. As to the natural follow-up question to that -- *i.e.,* does that statutory enhancement apply? -- *Apprendi* is not only relevant, but dispositive.

The government makes an analogy to a speeding ticket, saying that speed limits apply whether a driver is given a ticket or not. That may be true, but the analogy is not on point. If there were a guidelines enhancement for speeding, then it is true that a sentencing court could make a factual finding and impose the enhancement whether or not the defendant had gotten a speeding ticket. The defense does not dispute that. But if there were an enhancement that said "if the defendant had previously received a speeding ticket …", then the fact that the defendant actually had been speeding and could have gotten a ticket would not make the enhancement applicable. That is a far more apt comparison. Section 3C1.3, unlike most enhancements in the guidelines, is by its text not dependent on direct factual findings, but instead is tethered to a specific statutory enhancement. The fact that §3C1.3 is written differently than other guidelines is not a reason to assume that its text should be ignored. Instead, the fact that it is written differently means that difference should be honored.

None of the cases that the government cites address the question that is being raised here. The most recent of the cases is *United States v. Marcotte*, 835 F.3d 652 (7th Cir. 2016). Mr. Marcotte was sentenced at the same time for tax fraud offenses and a

second, separately numbered indictment for failing to appear for his sentencing on the tax case. Mr. Marcotte's complaint seemed to be that the offense of failing to appear can only be committed when one is on bond, so it is somehow improper to get penalized both with the failure to appear conviction and a §3C1.1 enhancement. The *Marcotte* opinion indicates that the defendant challenged whether double jeopardy applied, whether §3147 applied to related cases, and whether there were double counting issues. The Seventh Circuit affirmed. The issues in *Marcotte* are not presented here. The fact that the Seventh Circuit affirmed the enhancement against different kinds of challenges does not decide anything in this case. The other somewhat recent Seventh Circuit case cited by the government is *United States v. Rigsby,* 501 Fed.Appx. 545 (7th Cir. 2016). In that unpublished opinion, the Seventh Circuit chided the government for not seeking a §3C1.3 enhancement, but there is no indication that §3C1.3 was discussed or considered either at the district court level or even on the appeal. In other words, *Rigsby's* discussion of §3C1.3 is an aside, addressing an issue that was never briefed by the parties, and certainly not addressing the question of whether §3C1.3 could be applicable when §3147 was not charged. That question was not litigated or even discussed in *Rigsby.*

The government does cite an unpublished 5th Circuit case which supports its position. Apart from being an unpublished decision, *United States v. Simpson,* 682 Fed. Appx. 299 (5th Cir. 2017) determines that there is a distinction between the phrasing "… is convicted under 21 U.S.C. …" and the phrasing in §3C1.3 of "if a statutory enhancement under § 3147 applies." To the Fifth Circuit, the former meant that an actual conviction was required, while the latter does not. The counterargument is that it would

not be quite correct to say that anyone was ever convicted under 18 U.S.C. §3147; it is a statutory sentencing enhancement, not a free-standing offense. The way that the Commission phrased §3C1.3 makes sense and remains unambiguous.

Additionally, to the extent that the government cites older cases which interpret §2J1.7, which was the predecessor to §3C1.3, there is a significant distinction. Section 2J1.7 said "if an enhancement under §3147 applies, add 3 levels …" That section was deleted from the guidelines in 2006 and §3C1.3 was added, which says "If a statutory sentencing enhancement under 18 U.S.C. § 3147 applies …" The key difference is the substitution of the phrase "statutory sentence enhancement" for "enhancement." This change shows a deliberate attempt by the Commission to tie the §3C1.3 enhancement only to situations where the extra sentence under §3147 was actually being used. Again, the word "statutory" should not be ignored.

Furthermore, there are cases in this district where §3C1.3 was not applied but obviously could have if the government's interpretation of §3C1.3 were correct. Although such cases are necessarily difficult to find, [2] the defense can point to two of them. One example would be *United States v. Edward Vrdolyak*, 15 CR 314. In that case, a former alderman was convicted of tax evasion that occurred between 2003 and 2015.

---

[2] Cases where this issue could have been raised but was not are not easy to find because the searches entail looking for cases with qualifying facts but where no issues concerning §3C1.3 or §3147 were raised. A Westlaw search for opinions or filings that do not mention §3C1.3 or 18 USC §3147 is not a productive exercise. A second characteristic of such cases would be that the fact that the offense was committed while on bond in another federal case would tend not be mentioned in opinions or filings, because it was not considered material to anything.

The same defendant had been previously charged and convicted in a federal criminal case where he was released on bond between 2007 and at least 2009. *See* N.D. Ill. Case No. 07 CR 298. The plea agreement in 15 CR 314 does not mention any §3C1.3 enhancement, and nothing in the docket suggests that possibility was ever discussed.

A more recent example is *United States v. John Hummons*. *See* N.D. Ill. Case No. 18 CR 332-1 (sentenced February 4, 2022). Mr. Hummons was convicted of a series of armed robberies committed while on bond on a stash house case. *See* N.D. Ill. Case No. 12 CR 887-2. An examination of the docket of the more recent case, including the plea agreement and sentencing memoranda, gives no indication that §3C1.3 was discussed.

Mr. Wu is not arguing because the government missed the enhancement in other cases, they should miss it in his case also. Instead, it is the defense's position that in cases like *Vrdolyak* and *Hummons*, the government was correct not to raise §3C13 as an issue, because it was inapplicable for the same reasons that it is inapplicable here. Because §3147 was not charged in the indictment, the statutory enhancement did not apply, and because the statutory enhancement did not apply, the guideline tied to the statutory enhancement did not apply.

Finally, if the Court were wondering why the Sentencing Commission would write §3C1.3 so narrowly that it is inapplicable in a situation like this, a few things could be pointed out. First, the plain text of a statute or guideline should be followed even if the Court might have made different choices. The government suggests replacing an examination of the text of §3C1.3 with an inference that the Commission was using the phrasing it chose as a shorthand for something else, and this Court can decide what they

8

must have really meant. *See* ECF #122 at 8-9. That is not what courts do. Second, under any interpretation, §3147 only applies to <u>federal</u> bond status, and not to offenses committed while on state court bond. From a §3553 standpoint, that is an odd distinction to make. It is difficult to see why society's needs to punish, deter, rehabilitate and incapacitate would be greater for offenses committed on federal bond than for offenses committed on state court bonds. Nevertheless, §3147, and therefore §3C1.3, is clearly limited to offenses committed on federal bonds. That leads to a further logical inference that the intent of §3C1.3 is not to embed into the guidelines a consideration about a greater need for punishment, but instead simply to implement a specific statute that Congress enacted. The Sentencing Commission apparently perceived a need to address §3147 and the question as to how its statutorily required consecutive sentence should be imposed. Section §3C1.3 is the Commission's answer. It is very narrowly tailored for situations when §3147 and its statutorily required extra sentence applies. In this light, it makes perfect sense that in Mr. Wu's case, where that statutory enhancement does not apply (as evidenced by the fact that it was not charged or pled to and no one is asking for it), §3C1.3 is also not applicable.

  In short, the plain text of §3C1.3 makes the three level enhancement solely contingent on whether a statutory enhancement under 18 USC §3147 applies. Since the statutory enhancement does not apply, the three levels under §3C1.3 do not either.

II.  **Guidelines issue: is the Milwaukee case relevant conduct?**

  The other technical issue disputed between the parties is whether Mr. Wu's 2016 conviction for fraud in Milwaukee should be treated as criminal history, or as relevant

9

conduct within the current offense. The defense has asserted that because the Milwaukee conduct occurred during the time period charged in the current indictment, involves the same general kind of conduct, and because the factors that unify the charged any relevant conduct are also generally common to the Milwaukee conduct, the Milwaukee conduct should be treated as relevant conduct to this case. The government disagrees.

The government says that one cannot simply look to the type of offense to determine if offenses are related. ECF #122 at 12. That is true. But the factual points that the government points out to distinguish the offenses do not make any meaningful distinctions. There is nothing suggesting that Mr. Wu segregated any of his financial dealings from any others, including in the Milwaukee case. The government also makes a geographical distinction in that the victims in the Milwaukee case were in Milwaukee, while the victims in this case were in Illinois and California. Illinois and California are thousands of miles apart. The yogurt shops from the Milwaukee case were in California and Arizona. Additionally, at least one victim from this case appears to live on the east coast.[3] Essentially, Mr. Wu's business happened anywhere in the United States, so geography does not make these into separate schemes. The government points out that the Milwaukee victims were not connected to the victims in this case. That also proves nothing since many of victims in this case were not connected to each other. Some were, and some weren't. Mostly, the victims did not know each other.

---

[3] Counsel is referring to the person discussed on pages 25-26 of the government's version of the offense, with initials L.A. Even the government's version says "This was an inter-state fraud. Wu was in California, and his victims were in Chicago, Illinois, California, and other states." Gov. Ver. at 42.

The government also says that the Milwaukee case involved frozen yogurt stores, while this case did not. This is not a meaningful fact. A comparison of all the relevant conduct in the PSR could easily fill 10 pages, but the point of that discussion would be that there was no pattern here. They all involved business ventures. Some of the victims gave Mr. Wu money to invest for them. Some of them loaned him money, based on untrue representations about his ability to repay them. Many, but not all, were running their own businesses or projects and hired Mr. Wu to perform services. Some of the victims were related to Mr. Wu in some way, some were old friends, and others were not. The businesses that they were launching had no common denominator whatsoever. And Mr. Wu had partners in all of the businesses; his partners were the people now denominated as victims in this case.

Rather than pick apart the whole, perhaps the easiest way to decide this is simply to look at the oldest conduct included in the PSR's relevant conduct. That would be the loan to S.M.W. *See* gov. ver at 26. That loan occurred in March of 2009, before any of the other conduct in this case, and apparently before the Milwaukee conduct as well. Mr. Wu asked for the loan to fund a restaurant he was running in Barrington. There was a restaurant, and it did not succeed. Mr. Wu started repaying the debt in 2014, and continued during until Mr. Wu was arrested. *Id*. S.M.W. probably does not know anyone else from this case.

It is difficult to see how this is relevant conduct to the present charges, except that involved Mr. Wu, money, and dishonesty. That may be enough; the defense is not contesting that this is relevant conduct; Mr. Wu wants to admit his wrongdoing, make a

11

clean break with his former life, and accept his punishment. But there is no principled way to include this and not the Milwaukee conduct. The overlap of time and modus operandi make all of these ventures related, or they are not related. The defense is acquiescing in the government's efforts to make the relevant conduct in this case all-inclusive, but if that is the approach that is being used, the government should not be allowed to selectively exclude one portion of Mr. Wu's conduct because it does not suit them.

Admittedly, there is one characteristic shared by all the other relevant conduct that is not present in the Milwaukee conduct. For all the relevant conduct included in the PSR, the victims did not know that Mr. Wu was in federal prison in 2017. The Milwaukee victims necessarily knew otherwise. The defense does not dispute that Mr. Wu's failure to inform his business partners that he was in the middle of a federal fraud prosecution might be considered a material omission that could have affected their decisions whether or not to deal with him. That is nevertheless not much of a unifying characteristic for conduct that occurred between 2009 and 2018, nor is it the primary complaint of the victims. Had Mr. Wu succeeded in keeping all his projects thriving during his 2017 incarceration, it is unlikely that this prosecution would be occurring. His lies about his whereabouts during 2017 were simply one expression of a larger pattern, and that larger pattern is the real problem. The real problems concerned money. In that regard, there is no difference between the Milwaukee victims and any other.

As a final comment on the offense conduct in general, the government and the probation office have described some of Mr. Wu's payments to some of the victims in

12

this case as "Ponzi" payments. *See* PSR at 5, 8; Gov. Version at 2, 6, 8, 42. That does not seem accurate. The three things that typically define a Ponzi scheme are that 1) little or no actual productive work is done by the enterprise; 2) instead, earlier investors are paid using money from later investors; and 3) later investors are enticed to invest by the success that the earlier investors seem to be enjoying. It is almost certainly true that some payments to some of the earlier people involved were made with monies received from later participants.[4] But this is not a case where no productive work was done. Although the defendant is not going dispute the government's loss amount or assert that everything was done exactly as promised, these were real businesses, and Mr. Wu did want these ventures to succeed. He helped create websites and movies and marketing materials and he arranged deals that funded real businesses. His hope was that one or more or all of the projects would make them all rich. Again, it must be emphasized that Mr. Wu is not saying he did these things honestly. He lied, overpromised and underdelivered. But it was not all smoke and mirrors. He worked hard. The other distinction between this and the

---

[4] The phrase "almost certainly" is used here because, at least for defense counsel, it is not possible to track all of the money in this case. Things are too interconnected, and many of the records do not exist. The government comments that this is Mr. Wu complaining about his own recordkeeping, and calls it "galling." *See* ECF #122 at 18. Actually, defense counsel's statement about the lack of records was based simply on the fact that several of the key email accounts were closed during the first months after Mr. Wu's arrest, and Mr. Wu's laptop disappeared after his arrest. This is not "Mr. Wu lamenting that he did not keep better business records." Those records did exist at one time, and they no longer do. The defense cannot claim that the missing records would necessarily be exculpatory, but it is also not fair for the government to assume that everything that Mr. Wu has ever done has been venal. The things he did were bad enough, but the government is not being fair in assigning an evil motive to everything. Mr. Wu is, like everyone, neither perfectly good nor bad. He is trying to be better.

classic Ponzi situation is that Mr. Wu did not generally use his earlier failures to recruit later investors. That would not have worked very well; he was still trying to pay people back years later from businesses he had worked on earlier. They would not have provided glowing references for Mr. Wu. This may or may not be coincidental, but most of the victims did not know most of the other victims.

The point of this digression is that to describe payments Mr. Wu made to earlier participants in his ventures as Ponzi payments feels a little unfair. Had he not paid them at all, it would be said that he stiffed them and did not pay his debts. By continuing to make payments, he is labeled as making lulling or Ponzi payments. That seems like an unfair set of options. Given the alternatives, it is better that he was trying to pay his debts rather than not.

**Conclusion**

It remains the defense's assertion that the guidelines in this case are 63 to 78 months. But whatever this Court concludes, the guidelines are only one factor in a §3553 analysis, which should acknowledge both the aggravation and mitigation in this case. Mr. Wu told a lot of lies and hurt a lot of people. He did so over an extended period of time, and despite the fact that he underwent a federal prosecution for similar conduct. That is not good. The good news is that Mr. Wu has done extraordinarily well over the last three years on bond. He has shown that he can follow rules, work, behave, and do what every normal person does. He is working to be better than he was. Mr. Wu understands that this Court is about to impose a significant custodial sentence on him, but given the substantial signs of rehabilitation that have been shown, a sentence of three years, which would be

triple what he received on his last case, would be sufficient. He also still faces a supervised release sentencing in his 2016 case, which Judge Lee will decide after this Court does whatever it does.

 For all these reasons, it is respectfully suggested that a sentence of 36 months custody, followed by three years of supervised release, along with an order of restitution, would be sufficient in this case.

           Respectfully submitted,

           FEDERAL DEFENDER PROGRAM
           John F. Murphy
           Executive Director

           By: *s/ Daniel J. Hesler*
             Daniel J. Hesler

DANIEL J. HESLER
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8347

# **CERTIFICATE OF SERVICE**

  The undersigned, Daniel J. Hesler, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CIV.P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

DEFENDANT WU'S REPLY
TO THE GOVERNMENT'S SENTENCING MEMORANDUM

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on February 10, 2022, to counsel/parties that are non-ECF filers.

        By: */s/Daniel J. Hesler*
           DANIEL J. HESLER
           FEDERAL DEFENDER PROGRAM
           55 E. Monroe St., Suite 2800
           Chicago, Illinois 60603
           (312) 621-8347