```
                    IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
                             EASTERN DIVISION


UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )  Docket No. 18 CR 852
                                 )
       vs.                       )
                                 )
RAYMOND WU,                      )  Chicago, Illinois
                                 )  July 7, 2022
            Defendant.           )  9:30 a.m.


                TRANSCRIPT OF PROCEEDINGS - Motion
       BEFORE THE HONORABLE CHIEF JUDGE REBECCA R. PALLMEYER


APPEARANCES:

For the Plaintiff:        HON. JOHN R. LAUSCH JR.
                          UNITED STATES ATTORNEY
                          BY:  MR. PAUL SCHIED
                          219 South Dearborn, 5th Floor
                          Chicago, Illinois  60604


For the Defendant:        FEDERAL DEFENDER PROGRAM
                          BY:  MR. DANIEL J. HESLER
                          55 East Monroe Street, Suite 2800
                          Chicago, Illinois  60603







Court Reporter:           FRANCES WARD, CSR, RPR, RMR, FCRR
                          Official Court Reporter
                          219 S. Dearborn Street, Suite 2524A
                          Chicago, Illinois  60604
                          (312) 435-5561
                          frances_ward@ilnd.uscourts.gov
```

1       (The following proceedings were had telephonically:)
2       THE CLERK: 18 CR 852, USA versus Raymond Wu for
3   status.
4       THE COURT: Good morning.
5       Let me get your appearances for the record.
6       Do we have the government on the line?
7       MR. SCHIED: Yes. Paul Schied for the United
8   States.
9       Good morning, your Honor.
10      THE COURT: Good morning.
11      And for the defendant.
12      MR. HESLER: Dan Hesler of the Federal Defender
13  Program. Also, Mr. Wu is on the line.
14      THE COURT: Mr. Wu is also with us. Okay. Good
15  morning.
16      We put this over after some concern was raised
17  about records that were available on the computer and did
18  not -- were not viewed by counsel before the time that we
19  made a restitution determination.
20      What's our status?
21      MR. SCHIED: Your Honor, I am happy to talk about
22  the kind of background of the computer story.
23      THE COURT: Great.
24      MR. SCHIED: The government does not have access to
25  the computer and has not viewed any of the information on it.

1  I am not sure if defense counsel has.

2  But would you like me to begin with kind of the
3  background here?

4  THE COURT: That would be great. That would be
5  great.

6  MR. SCHIED: Excellent.

7  So first I will kind of describe what happened with
8  the computer, and then we would like to try to level set with
9  where we are now.

10  The defendant basically, from the start of this
11  case, represented that he had access to assets that could
12  potentially provide restitution. Of course, there was some
13  skepticism about that based on the core conduct of this case,
14  which involved Mr. Wu representing himself as a wealthy
15  businessman who had assets that he did not in fact have.

16  But nonetheless, the parties have tried to
17  cooperate, where possible, to explore the possibility of
18  gaining access to assets that would provide restitution.

19  None of those really materialized. But as part of
20  that effort, in the spring of 2019, there was discussion
21  about identifying computers that maybe would have information
22  about those types of assets.

23  Because they lived together, Mr. Wu and Ms. ▓,
24  Ms. ▓ was thought to maybe have computers that could be
25  helpful to that. The government reached out to Ms. ▓'s

1 attorney, who provided a laptop and an iPad from the couple's
2 home.
3 　　　　Those items, which were encrypted, were received by
4 the FBI.  In the summer of 2019, they were sent to the lab.
5 And in the fall of 2019, the lab unsuccessfully tried to
6 access them.
7 　　　　So at that point the United States now has items
8 that may have evidence on them that we cannot access.
9 　　　　As your Honor is no doubt aware, the government's
10 ability to crack encryption is constantly evolving.
11 Something that we cannot access today we may be able to
12 access tomorrow.
13 　　　　Not having seen what might be on the computer, the
14 government was not in a position to say what, if any,
15 evidence was on there.
16 　　　　So the case progressed.  The government had
17 accumulated through other sources a vast amount of evidence
18 of the defendant's fraud, including detailed financial
19 records showing the movement of money associated with the
20 fraud.
21 　　　　Defendant at sentencing made suggestions that maybe
22 additional information would indicate that some of
23 defendant's expenditures of client funds were legitimate
24 business expenses rather than defendant using client funds
25 for his own purposes.

1           The government's position was and continues to be
2  that the idea of legitimate business expenses was not a
3  realistic one and that Mr. Wu was engaged in a fraud that
4  included portraying himself as rich and successful, and the
5  independent financial information that had been accumulated
6  supported that.
7           Defendant suggested in a footnote in a sentencing
8  filing that there may be a lost computer that could support
9  his position on business expenses.  But regardless, he was
10 accepting the full loss amount, that he wanted to accept
11 responsibility for his crimes.
12          The defendant did not allege and has not alleged
13 that there was anything wrong with the mountains of financial
14 information that the government did have or that there was
15 any question of defendant's guilt.  He pled guilty and told
16 the Court that he was accepting responsibility.
17          So as the Court is well aware, the government
18 routinely holds on to what may be personal property of a
19 defendant if it is or might constitute evidence until after a
20 case is concluded.
21          This laptop, which may have contained additional
22 evidence, was such an item.  After judgment was entered in
23 this case, the government returned the laptop to Mr. Wu.
24          As far as communication between the parties
25 regarding the laptop, this was a minor topic that was

1  addressed between previous counsel for the parties.  It was
2  not a major issue.  It related only to potential assets that
3  could be used for restitution.  And it appears not to have
4  been taken up again after initial conversation.
5      It also appears, as I think, at this point, the
6  Court is aware -- based on the parties' previous
7  conversations, it appears that neither counsel -- current
8  counsel for the government nor for the defendant was aware of
9  the computer until it was returned in March.
10      Defendant's filing related to this matter followed
11 the return of the laptop in March.
12      The government, in an effort to understand what
13 information might be on the laptop, reached out to defense
14 counsel to ask for the return of the laptop and any password
15 that Mr. Wu had used to encrypt it.
16      Defense counsel responded by declining to return
17 the laptop and invoking Mr. Wu's Fourth and Fifth Amendment
18 rights.
19      I know this in part because, had the government
20 returned Mr. Wu's laptop at an earlier date in an effort to
21 find out what was on it, we undoubtedly would have met
22 with -- we would have been in the same situation where we are
23 now where Mr. Wu was disinclined to provide access to the
24 government given that it is possible to likely that there is
25 information on that computer that was either harmful to him

1	or at least corroborating of the independent financial
2	information.
3	    The government has no obligation, discovery or
4	otherwise, to turn over a laptop potentially containing
5	evidence that it could not access to the defendant.
6	    So that is kind of the broad story of the computer
7	as the government understands it right now.
8	    And if the Court will permit me, I would like to
9	just kind of recap where we currently stand.
10	    The government was in possession of a laptop that
11	may have contained additional evidence for which the
12	government could not access.
13	    At the conclusion of the case, the government
14	turned that laptop over to Mr. Wu, who now refuses to grant
15	the United States access.
16	    Mr. Wu has made no substantive motions related to
17	the laptop, just the withdrawal of counsel and postponement
18	of self-surrender date motions that the Court has addressed.
19	    Defendant has not suggested that there was any
20	wrongdoing on the government's part or, if there were, what a
21	remedy might be.  And the Court, of course, has entered
22	judgment in this case.
23	    At this point, it is the government's view that
24	nothing before the Court certainly -- unless there are
25	substantive motions or information that the defendant is

1  willing to share, there is nothing for the Court -- before
2  the Court that requires Court action.  And nothing about the
3  current situation requires the continued postponement of the
4  defendant's self-surrender date.
5       The defendant has had the laptop now for over three
6  months at this point and has not filed any substantive
7  motions related to it.
8       So absent any compelling reasons, the government
9  would support either the current self-surrender date of
10 September 7th or potentially even moving that date up.  But
11 at the current juncture, it does not appear to the government
12 that there is any real reason to delay that date any further.
13      THE COURT:  All right.  Response either from --
14 well, I guess from Mr. Hesler.
15      MR. HESLER:  Your Honor, I came into this case in
16 the summer of 2019.  I think it was July.  I was trying to
17 look that up as we were sitting here.
18      So if there was discussion about this in the spring
19 of 2019, either I wasn't aware of it or I didn't realize the
20 significance of it.  And then later on, I spent a lot of time
21 wondering about where his laptop was.
22      There is something tickling the back of my head,
23 which is part of the reason why I'm asking to withdraw,
24 saying that Ms. Stern said something to me about a laptop.
25 But for some reason, I did not think or she didn't think --

1  I'm not sure whether it was based on what she said or what I
2  interpreted it as -- that it was the laptop.  So I didn't
3  know that it was there.
4          It is true that I told the government that, no, I
5  wasn't going to give them a copy of the laptop right now.  My
6  answer, in a more nuanced way, was, if there was a
7  substantive motion, it would be completely reasonable to
8  share a copy of that laptop.  But in the absence of one --
9  until or unless one is filed, I didn't see any reason for
10 Mr. Wu to give that up.
11         THE COURT:  Fair enough.
12         Let me zero in here on something, though.  The
13 laptop is now available to Mr. Wu; is that correct?
14         MR. HESLER:  He has the laptop, and I made a
15 copy --
16         THE COURT:  Okay.
17         MR. HESLER:  -- before giving it to him.
18         THE COURT:  Okay.  And is it possible for either or
19 both of you to review the contents of the laptop at this
20 point?
21         MR. HESLER:  Mr. Wu has been reviewing the
22 contents.  I have the backup.  I haven't -- frankly, I
23 haven't -- I have not touched it because it's a huge
24 undertaking.
25         It involves the question of, was there a viable

1  alternative defense strategy in this case, as I basically
2  said, skip the details.  We are not going to try to nickel
3  and dime what was legitimate -- a major part of that choice
4  was that I didn't have all the information.  I suspect that
5  all --
6          THE COURT:  Understandable.  I understand your
7  position and concern.
8          Here is what I'm trying to zero in on.  The
9  contents of the laptop might be irrelevant, or they might be
10 directly relevant either to a claim of -- that supports a
11 defense in this case or to a claim that the amount of
12 restitution that's to be ordered here is vastly overstated.
13         It's also possible, of course, that the laptop
14 contains different types of evidence, maybe evidence that
15 makes things worse for Mr. Wu in one way or another.
16         Given that Mr. Wu at this moment has been able to
17 review the contents of the laptop, the government has not,
18 and you have not, wouldn't it make sense for us to find out
19 whether Mr. Wu believes that there is information that could
20 be useful to him?
21         Because if it turns out after he has had his chance
22 to look at this that he does not believe that the information
23 is useful to him, then I see no reason for us not to go
24 forward with his surrender date and whatever appeal is
25 appropriate, nor do I think there is any basis for you to

1  withdrew, Mr. Hesler, on the theory that this is a stone you
2  should have turned over but didn't.  If it turns out that
3  there nothing under that stone, there really is no prejudice
4  to Mr. Wu.
5      And the government is not in a position, as I
6  understand it, to even address that question because, to
7  date, the government has never had the password to get into
8  it and doesn't have access to the information right now.
9      Maybe what we really ought to do is ask for you to
10 take some time -- a short time, maybe a couple of weeks -- to
11 consult with Mr. Wu about whether the information that he now
12 has access to and nobody else does could be useful to him in
13 a defense, either with respect to a substantive defense or
14 with respect to an amount of restitution argument.
15      MR. HESLER:  Judge, he and I have been discussing
16 that question for the last three months.  Mr. Wu believes
17 that there is plenty of backup for sort of the substance of
18 some of the things that he -- the question of what was
19 legitimate and what wasn't.
20      All that is balanced against all kinds of factors
21 that he and I have talked about that are just at the core of
22 attorney-client stuff that I don't really want to put on the
23 record at this point.
24      I still am persisting in my motion to withdraw.  I
25 feel like I took a hard position, and it turns out that that

1  wasn't there.  And also, I'm the record custodian now of this
2  thing.
3           THE COURT:  Mr. Hesler, you haven't told me how --
4  you have told me there is a laptop that you didn't explore.
5  You haven't told me how exploration of that laptop would have
6  made a difference.  Can you tell me that it would have?
7           All you can tell me is that you don't know whether
8  it could have.  Is that right?
9           At some point, Mr. Wu has an obligation here.  He
10 has got access and he has the password and he can get in.
11 And if he thinks there is something in there that's useful to
12 him, he could convey that to you.  And you could say to me,
13 "Judge, I should have known this, and I didn't.  I need to
14 withdraw."  Or you could say, "I've reviewed this with
15 Mr. Wu.  I think he has got a viable defense.  I would like
16 to pursue it."  Or you could say, "I've reviewed this with
17 Mr. Wu.  He and I agree that it does not make a difference in
18 this case."
19          You are not telling me any of those things.
20          MR. HESLER:  Judge, there is this huge, complicated
21 problem of ten years of business dealings balanced against
22 the big and obvious lies that Mr. Wu told on a number of
23 things that the government does have.  This case could have
24 been done another way.  Whether that was the right way or
25 not, Mr. Wu and I may not be in agreement on.

```
 1            If you want me to take another couple weeks and
 2   continue that discussion, I can, but I still think he needs
 3   new counsel.  That is my -- but whatever the Court rules is
 4   fine.
 5            THE COURT:  Well, wouldn't the -- I mean, he
 6   certainly is entitled to have a different attorney represent
 7   him on appeal.
 8            MR. HESLER:  The time for appeal lapsed.
 9            THE COURT:  Well, in that case, with respect to a
10   2255 petition, right?
11            MR. HESLER:  Correct.
12            THE COURT:  Okay.  If I were to appoint another
13   lawyer, it would be for that purpose?  Is that what you are
14   telling me?
15            MR. HESLER:  It would be for the purpose of
16   consultation to determine whether some collateral attack is
17   appropriate.  But that collateral attack -- the question is
18   probably an ineffective assistance of counsel question.  I
19   don't feel like I can advise him on that completely.  And
20   again (inaudible).
21            THE COURT:  Right.
22            MR. HESLER:  There was a mountain of financial
23   dealings weighed against a bunch of other things.
24            THE COURT:  That mountain and that data is all
25   available to Mr. Wu, and none of it's available to the
```

1  government.

2  MR. HESLER: They have had a chunk of it.

3  THE COURT: But they didn't have access to that
4  computer. That's the point. As I understand it, they had
5  the computer, but they didn't have the passcode and couldn't
6  get into it.

7  So there is nothing in that computer that is
8  available to the government and not available to defendant.
9  To the contrary, it's all available to the defendant, and
10  none of it's available to the government at this point.

11  I have yet to hear a specific about what that
12  content is and how it relates to Mr. Wu's situation, even
13  numerically, let alone guilt or innocence. He did plead
14  guilty. There was an evidentiary basis for that plea.

15  It seems to me what I ought to do at this point is
16  reinstate a surrender date -- set a surrender date. And
17  certainly we can -- given that Mr. Wu may wish to file a 2255
18  petition, he is free to do that. And if it's appropriate, we
19  can find a federal defender lawyer to do that -- to work with
20  him on that.

21  I don't see a basis otherwise to take any action.
22  There is no other motion before me besides your motion for
23  leave to withdraw.

24  MR. HESLER: That's correct.

25  THE COURT: What I understand to be the case is

1  that we are talking about evidence that Mr. Wu has and the
2  government doesn't have.  That's not -- that by itself is not
3  a basis for us to delay proceedings here.
4              MR. HESLER:  Your Honor, there is a -- you set a
5  surrender date last time.  I think it's in September.
6              THE COURT:  Right.  I think we should proceed with
7  that surrender date.
8              MR. SCHIED:  Your Honor, that date is
9  September 7th.
10             MR. HESLER:  Perhaps we should ask Mr. Wu his
11 feelings on counsel at least.
12             THE COURT:  All right.
13             Mr. Wu, are you interested in working with another
14 attorney on this situation with your laptop or otherwise?
15             THE DEFENDANT:  Yes, I am.
16             THE COURT:  I'm sorry.  I didn't hear you.
17             THE DEFENDANT:  Yes, I am.
18             THE COURT:  Yes, you are?  All right.
19             You are not able to tell us anything about the
20 content of the computer right now that would support a
21 different outcome here; is that right?
22             THE DEFENDANT:  I believe I need counsel to help me
23 understand further what I should be doing and what was not
24 made available to me.
25             THE COURT:  Sir, I think that's -- for the record,

```
 1   we ordinarily consider what's not available to you as
 2   something in the hands of the government that they don't turn
 3   over.
 4           This is information, as I understand it, that was
 5   not available to the government.  It was available to you and
 6   your then-girlfriend.  It has never been available to the
 7   government.
 8           With respect to the material and working with
 9   counsel, my understanding is that, to the extent I know
10   what's on that computer at all, it sounds like it's financial
11   records that relate to your business dealings.  So it would
12   seem to me that you personally would have some information
13   about that.  I don't need to comment on this further.
14           I will appoint another lawyer to represent you for
15   purposes of a potential 2255 petition, but I'm going to stand
16   by the surrender date that is now set for September 7th.
17           MR. HESLER:  Thank you, your Honor.
18           THE COURT:  Thank you.
19           Your motion for leave to withdraw, Mr. Hesler, is
20   granted.  Thanks.
21           MR. HESLER:  Thank you.
22           MR. SCHIED:  Thank you, Judge.
23      (An adjournment was taken at 9:52 a.m.)
24
25
```

```
                        *    *    *    *    *
```

 I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

 /s/ Frances Ward                               September 2, 2022.
 Official Court Reporter
 F